J. T. Owens, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Mrs. J. T. Owens, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 63149, 63150.    Promulgated December 29, 1932.

*Percy W. Phillips, Esq.,* and *Richard B. Barker, Esq.,* for the petitioners.

*B. M. Coon, Esq.,* and *F. S. Gettle, Esq.,* for the respondent.

#### OPINION.

Smith: These proceedings, consolidated for hearing, are for the redetermination of deficiencies in income tax asserted for 1929 in the amount of $552.66 in the case of each petitioner.

The petitioners are husband and wife, who during the taxable year 1929 were residents of the State of Texas. They filed separate income tax returns for 1929, each reporting one-half of the community income. In 1929 the petitioners owned 2,165 shares of stock of the North Texas National Bank of Dallas, Texas, which stock had been acquired by J. T. Owens in May, 1925, at the time of the organization of said bank, at a cost of $51,960.

On October 14, 1929, the North Texas National Bank of Dallas and the Republic National Bank & Trust Company of Dallas entered into the following "Agreement of Consolidation" and "Agreement to Consolidate":

*Agreement of Consolidation*

Be it resolved by the Board of Directors of the Republic National Bank & Trust Company of Dallas, Texas, that in pursuance of a resolution passed by the Board of Directors of this Bank on the 14th day of October, 1929, the officers have submitted to the Board the following contracts and terms of consolidation concluded by them with the officers of the North Texas National Bank to be submitted to the Board of Directors of the several banks for their consideration and action:

This agreement made between the Republic National Bank and Trust Co., of Dallas, Texas, and the North Texas National Bank, Dallas, Texas, each located in Dallas, Dallas County, Texas, and each acting pursuant to a resolution of its board of directors and by a majority of said boards, pursuant to the authority given by and in accordance with the provisions of an act of the Congress of

the United States entitled "An act to provide for the consolidation of national banking associations," approved on the 7th day of November, 1918, witnesseth as follows:

(1) Republic National Bank and Trust Company, of Dallas, hereafter referred to as the party of the first part, and the North Texas National Bank, Dallas, Texas, hereafter referred to as the party of the second part, are hereby consolidated under the charter of the first named association as hereby modified.

(2) The name of the consolidated association shall be "Republic National Bank & Trust Company, of Dallas."

(3) The amount of the capital stock of the consolidated association shall be four million (4,000,000.00) dollars, divided into two hundred thousand (200,000) shares of twenty dollars ($20.00) each, subject to the right to change the amount of said capital hereafter as is now or shall hereafter be authorized by law. On the date of consolidation its surplus shall be ——— said capital, surplus and undivided profits at the date of consolidation shall then aggregate ———. Of this capital one hundred seventy-five thousand (175,000) shares shall be allotted to the present shareholders of the Republic National Bank and Trust Company of Dallas, being one share for each share now held by them, and twenty-five thousand (25,000) shares shall be alloted to the present shareholders of the North Texas National Bank, Dallas, being one-half (½) share for each share now held by them. All of the assets of each association, whether ledger or nonledger, shall become the property of the consolidated association upon the effective date of consolidation, which consolidated association assumes all the liabilities of each association of said date.

(4) The board of directors of the consolidated bank shall consist of not less than five nor more than one hundred shareholders, the exact number of directors and individuals serving as such for the remainder of the year to be determined by the stockholders of the consolidated bank at their special meeting to be held on November 14, 1929.

(5) This consolidated [consolidation] shall become effective when it shall have been ratified and confirmed by the affirmative vote of the shareholders of each association owning at least two-thirds (⅔) of its capital stock outstanding, at a meeting to be held pursuant to a call by the directors heretofore made, and shall have been approved by the Comptroller of the Currency of the United States.

Witness the signatures and seals of said associations, this the 14th day of October, 1929, each hereunto set by the President and attested by its Cashier, pursuant to a resolution of its board of directors, acting by a majority thereof, and witness the signatures hereto of a majority of each of said boards of directors.

[Signatures omitted.]

*Agreement to Consolidate*

THE STATE OF TEXAS
COUNTY OF DALLAS

This agreement, made and entered into on this the 14th day of October, 1929, by and between the Republic National Bank and Trust Co., of Dallas, a corporation organized under the laws of the United States, and hereinafter referred to as the party of the first part, and the North Texas National Bank, of Dallas,

a corporation organized under the laws of the United States, hereinafter referred to as the party of the second part, each of said corporations being located in Dallas, Dallas County, Texas, each acting through its duly authorized officers and in pursuance of resolutions adopted by their respective board of directors, witnesseth—

WHEREAS, it is the desire of each of the parties hereto to consolidate the business and operations of the said corporations, and for the purpose of expediting, conserving, and protecting the interests of each of the parties while such consolidation is being consummated in accordance with the provisions of an act of the Congress of the United States entitled " An act to provide for the consolidation of National Banking Associations," approved on the 7th day of November, 1918, it is mutually agreed and contracted by and between the said parties as follows:

In consideration of the premises and covenants herein made, party of the second part does hereby sell, assign, transfer, set over and deliver to party of the first part, such of its property and assets, consisting of cash on hand and in its vaults, balances with correspondents, notes and other evidences of indebtedness, bonds, warrants and securities, or any other property of whatever kind or character and wherever situated and however evidenced, as will protect and compensate party of the first part for the liabilities herein and hereby assumed by it, and party of the second part does hereby agree to properly transfer such assets by endorsement, or by execution of any instrument necessary to make such conveyance effective; and

WHEREAS, in consideration of the transfer by the party of the second part of the assets above named, party of the first part has assumed and does hereby assume all of the liabilities of the party of the second part at the time of consummation of this agreement, save and except the liability of party of the second part to its shareholders on account of their capital stock investment; and

WHEREAS, after the acquisition of the assets and assumption of liabilities of party of the second part by party of the first part, the party of the second part will have remaining the liability due its shareholders on its capital stock, surplus and undivided profits, to offset which it will have a like amount of assets of various kinds and character, which liability, together with all other liabilities, shall and will be assumed by party of the first part, and which assets it is agreed shall and will be acquired by party of the first part on a basis to net the shareholders of the party of the second part the sum of forty-seven and 50-100ths dollars ($47.50) cash per share for each and every share of stock owned by such shareholders in said party of the second part, but it is expressly understood and agreed that the shareholders of the party of the second part on or before November 25, 1929, shall and do have the right and privilege of subscribing to and purchasing the twenty-five thousand shares (25,000) (allotted to them in the consolidation contract) of the par value of twenty ($20.00) each, of the party of the first part, on a basis of sixty-five ($65.00) dollars per share, such right and privilege being allocated to said shareholders of party of the second part in paragraph three (3) of the consolidation agreement this day entered into by and between the respective parties hereto, which consolidation agreement is hereby referred to for further particulars, and which agreement of consolidation has been approved by a majority of the board of directors of each party, to the fulfillment and completion of which agreement the parties hereto, as well as the board of directors, thereof, obligate and pledge themselves to carry out by advertising the contemplated action, and submitting it to their respective shareholders

as speedily as possible, within the provisions of the laws governing consolidations of national banking associations.

In testimony whereof the parties hereto have caused these presents to be signed by their respective Presidents, and attested by their respective Cashiers, and their seals to be affixed hereto, this the 14th day of October, 1929.

[Signatures omitted.]

These agreements were subsequently ratified and approved in 1929 by the respective stockholders of the two banks.

Pursuant to the above agreements, the petitioners within the taxable year 1929 exchanged their stock in the North Texas National Bank of Dallas for 1,082 shares of the new stock of the Republic National Bank & Trust Company of Dallas, which at the time the petitioners received it had a value of $65 per share, and for $32,-507.50 in cash.

The North Texas National Bank of Dallas had on hand, at the time of the merger in 1929, surplus and undivided profits amounting to $6.086 per share, which had been earned by the bank since the time of its incorporation in May, 1925.

Respondent determined that the cash received from the exchange of capital stock was taxable as ordinary income at both normal and surtax rates. One-half of the $32,507.50 total cash received, or $16,253.75, was included by the respondent in each petitioner's taxable income in the determination of the deficiencies.

The question presented by these proceedings is whether or not, when there has been a consolidation of banks and an exchange of stock for stock and cash, as in these proceedings, the cash, to the extent that it represents a distribution by the merging bank to its stockholders of undistributed surplus and profits, is in effect a distribution of a dividend within the provisions of section 112 (c) (2) of the Revenue Act of 1928, so that it is taxable only at surtax rates rather than at both normal and surtax rates.

The Revenue Act of 1928 reads, so far as material, as follows:

SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) *General rule.*—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) *Gain from exchanges not solely in kind.*—

(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such pararaph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

(2) If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as a gain from the exchange of property.

\* \* \* \* \* \* \*

(i) *Definition of reorganization.*—As used in this section and sections 113 and 115—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

Article 575 of Regulations 74, promulgated under the provisions of the Revenue Act of 1928, reads in part as follows:

ART. 575. *Exchanges in reorganizations for stock or securities and other property or money.*—If stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged for stock or securities in such corporation or in another corporation a party to the reorganization and other property or money, the gain, if any, to the recipient will be recognized in an amount not in excess of the sum of the money and the fair market value of the other property. No loss from such an exchange will be recognized. (See section 112 (e).) If a distribution of property or money in the course of a reorganization is otherwise within the provisions of this paragraph, but has the effect of the distribution of a taxable dividend, there shall be taxed to each distributee (1) as a dividend, such an amount of the gain recognized under this paragraph as is not in excess of the distributee's ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913, and (2) as a gain from the exchange of property, the remainder of the gain recognized under this paragraph.

\* \* \* \* \* \* \*

*Example* (2): The X Corporation has a capital of $100,000 and earnings and profits of $50,000 accumulated since February 28, 1913. The X Corporation in 1928 transfers all its assets to the Y Corporation in exchange for the issuance of all of the stock of the Y Corporation and the payment of $50,000 in cash to the shareholders of the X Corporation. A, who owns one share of stock in the X Corporation, for which he paid $100, receives a share of stock in the Y Corporation worth $100 and in addition $50 in cash. A will be liable to the surtax on $50.

It is the contention of the petitioners that, inasmuch as the amount of cash received by them, in addition to shares of stock of the Republic National Bank & Trust Company of Dallas, was in excess of their pro rata shares of the surplus and undivided profits of the North Texas National Bank of Dallas, such portion of the cash received as represents their pro rata shares of the surplus and undivided profits is taxable at surtax rates only and not at both normal and surtax rates. In making this contention they rely upon the decision of the Board in *George Woodward*, 23 B. T. A. 1259, wherein we held that where, upon reorganization, merger and consolidation of one corporation with another, a stockholder in the absorbed corporation receives one-half share of stock and $45 in cash for each share of stock held in the absorbed corporation, such cash payment being substantially equal to the stockholder's pro rata share in the surplus of said corporation, the cash payment has the effect of a distribution of a taxable dividend under section 203 (d) (2) of the Revenue Act of 1926. The section of the 1926 Act above referred to corresponds exactly with section 112 (c) (2) of the Revenue Act of 1928.

In the course of the *Woodward* opinion we stated:

\* \* \* In our opinion the provisions of section 203 (d) (2) are not concerned with the mechanism of the distribution made in pursuance of a plan of reorganization or with the agency through which the distribution was effected. The question to be answered under section 203 (d) (2) is whether or not, in practical result, the distribution made in pursuance of the plan of reorganization " has the effect of a distribution of a taxable dividend."

The respondent contends on brief that the facts which obtain in the present proceedings " show conclusively that it was not the intention that the stockholders of the merging bank were to receive their pro rata part of the surplus and undivided profits in cash and thus have the effect of the distribution of a taxable dividend." He further contends that the decision in the *Woodward* case is not in point in these proceedings, for the reason that in that case the cash received approximated the shareholder's pro rata share in the surplus of the merging corporation, whereas in the present proceedings the cash payment received by the petitioners was more than twice the amount of their pro rata share of the surplus and undivided profits of the North Texas National Bank of Dallas; further, that under the terms of the agreement to consolidate petitioners had an option to receive a net sum of $47.50 per share of stock exchanged, or part cash and part stock, on the basis of $65 per share in the continuing corporation for the shares exchanged; and that from this fact it follows that under the terms of the agreement all shareholders would not participate alike in the reorganization and that thus the effect of the distribution as a taxable dividend was clearly wiped out.

We are of the opinion that the *Woodward* case is in point in these proceedings. For reasons stated in that opinion, it was not the intention of Congress to subject to the normal tax the earnings of a merged corporation which were in fact distributed to the stockholders of such corporation on a reorganization. No argument is made by the respondent that the definition of a reorganization, contained in section 112 (i) (1) of the Revenue Act of 1928, does not cover the situation here presented. We think it clearly does. We are furthermore of the opinion that the mere fact that the petitioners had the option to demand all cash for their shares of stock in the merged corporation rather than a certain number of shares plus an amount of cash in the continuing corporation does not differentiate these proceedings from the *Woodward* case. The portions of the cash received representing the petitioners' pro rata portions of the surplus and undivided profits of the North Texas National Bank of Dallas are taxable at surtax rates only.

*Judgment will be entered under Rule 50.*