JOHN S. WOODARD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARJORIE C. LANGWORTHY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 71961, 71962. Promulgated July 20, 1934.

*Geo. B. Furman, Esq., C. E. Frey, Esq.,* and *P. R. Rogers, C.P.A.,* for the petitioners.

*James C. Maddox, Esq.,* for the respondent.

### OPINION.

TRAMMELL: Respondent originally determined that the transaction referred to in our findings of fact above constituted a reorganization, and computed the deficiency by including in income the gain derived by each of the petitioners upon the liquidation of the Lamination Co. only to the extent of the cash distributed to each. Respondent now contends that the transaction did not constitute a reorganization and that he erred in not computing tax upon the entire amount of the gain derived by each petitioner, and asserts claim for increased deficiencies accordingly.

Petitioners contend that there was a statutory reorganization, and that not only should the recognizable gain be restricted to the amount of cash distributed to each, but that so much of the recognizable gain as equals the ratable share of the surplus of the Lamination Co. distributed to each petitioner is subject to surtax as a dividend and not taxable as ordinary income.

So far as material here, the Revenue Act of 1928 defines the term "reorganization" as follows:

SEC. 112. (i) *Definition of reorganization.*—As used in this section and sections 113 and 115—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation or substantially all of the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred * * * .

The first question arising here is whether the transaction in 1930 effected a class (A) reorganization within the meaning of the quoted statute. There is no contention that it was a reorganization under clause (B), and obviously it was not, since immediately after the transfer neither the transferor nor its stockholders or both were in control of the transferee corporation. There is likewise no contention that under clause (A) there was a "consolidation" of the two corporations, or anything in the nature of a technical consolidation, as there was no new corporation organized to take over the combined businesses and assets of predecessors; nor did the Allegheny Co. acquire a majority of the stock of the Lamination Co.

This leaves for consideration, then, only the question whether the transaction amounted in effect to a merger through the acquisition by one corporation of all the assets and business of the other, in the circumstances shown.

In *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937; certiorari denied, 288 U.S. 599, the court held that reorganization of a corporation within the income tax statute does not embrace the mere purchase by one company of the assets of another; and that where a corporation transferred substantially all its properties to another corporation for cash and notes, and there was no continuity of interest on the part of the transferor corporation or its stockholders, there was no "reorganization" within section 203 (h) (1) (A), Revenue Act of 1926, which contains identically the same language as section 112 (i) (1) (A) of the Revenue Act of 1928, quoted above. In its opinion, the court said:

A merger ordinarily is an absorption by one corporation of the properties and franchises of another whose stock it has acquired. The merged corporation ceases to exist, and the merging corporation alone survives. * * *

* * * * * * *

When subdivision (h)(1)(A) included in its definition of "Merger or consolidation" the "acquisition by one corporation of * * * substantially all the properties of another," it did this so that the receipt of property by the corporation surviving the merger might serve to effect a reorganization as does an acquisition of stock. Each transaction presupposed a continuance of interest on the part of the transferor in the properties transferred.

In *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U.S. 462, the Supreme Court approved the principles laid down by the Circuit Court in the above quoted opinion, saying:

The words within the parenthesis may not be disregarded. They expand the meaning of "merger" or "consolidation" so as to include some things which partake of the nature of a merger or consolidation but are beyond the ordinary and commonly accepted meaning of those words—so as to embrace circumstances difficult to delimit but which in strictness can not be designated either merger or consolidation. But the mere purchase for money of the assets of one company by another is beyond the evident purpose of the provision, and has no real semblance to a merger or consolidation. Certainly, we think that to be within the exemption the seller must acquire an interest in the affairs of the purchasing company more definite than that incident to ownership of its short-term purchase-money notes. This general view is adopted and well sustained in *Cortland Specialty Co.* v. *Commissioner* * * *. It harmonizes with the underlying purpose of the provisions in respect of exemptions and gives some effect to all the words employed.

It is plain that in the instant proceedings there was no technical merger, as defined by the court in the *Cortland Specialty Co.*, case, *supra*, because the Allegheny Co. did not acquire any of the stock of the Lamination Co., but the effect of the transaction bears a real sem-

blance to a merger. It partakes of the nature of a merger, although beyond the ordinary and commonly accepted meaning of that word. As in the case of a true merger, one corporation acquired all the assets and business of the other for the purpose of operating the combined businesses, while one corporation was dissolved and ceased to exist. Also there was a substantial continuity of interest on the part of the transferor corporation's stockholders in the transferred properties. Certainly, they acquired an interest in the affairs of the transferee company more definite than that incident to the ownership of "short-term purchase-money notes." After the transfer the former stockholders of the Lamination Co. owned a beneficial interest in the assets of the Allegheny Co., including the transferred assets, equal to 75 percent of the beneficial interest which they had previously owned in the properties of the Lamination Co.

In *Minnesota Tea Co.*, 28 B.T.A. 591, we held that where one corporation transferred its assets to another corporation for stock and cash, and the transferor corporation continued in existence, distributing only the cash to its stockholders, there was no merger or consolidation, nor anything that partook of the nature of such, and hence no reorganization under section 112 (i) (1) (A), *supra*, although there was a continuity of interest in the transferred assets.

Thus, a mere continuity of interest alone is not sufficient under subdivision (A) to constitute a reorganization, unless coupled with a merger or consolidation, or something akin thereto. Continuity of interest alone through stock ownership is, of course, sufficient under clause (B) where such continuity amounts to control of the transferee corporation. The following extract from our opinion in the *Minnesota Tea* case has by analogy a reversed application to the instant case:

The parties to the transaction deliberately for their own purposes refrained from a merger. Furthermore they chose an arrangement which avoided the result of a merger. Instead of the shareholders of the Minnesota Co. owning shares of the Grand Union Co., as they would have if there had been a merger, they continued to own Minnesota shares; and instead of the Minnesota Co.'s disappearance as in a merger, its existence and powers continued, and as the owner of the Grand Union shares it brought about a freedom from immediate tax upon the dividends upon such Grand Union shares, since by section 23 (p.) such dividends are deductible by a corporation simultaneously with their receipt as gross income, while to an individual shareholder dividends are subject to surtax.

This decision does not restrict (A) to technical mergers. It still leaves room for a more expansive application of the statute. It might be suggested, for example, that by having the assets of the Minnesota Co. transferred to the Grand Union in exchange for shares and then having the Minnesota Co. promptly distribute such shares among its own shareholders in liquidation and dissolve, so that in all substantial respects the outcome would have been the same as if a true merger had occurred, the petitioners might properly have invoked part (A) of the definition.

In the present case, the effect or outcome of the transaction was in all substantial respects the same as if a true merger had occurred, and accordingly we hold that there was a reorganization within the purview of the quoted statute.

The respondent contends, however, that even if there was a statutory reorganization, the Lamination Co. was not a party thereto, and hence the entire gain derived by the petitioners from the distribution in liquidation of that company is recognizable for tax purposes. This contention, we think, is without merit. The parties have specifically stipulated that the Lamination Co. exchanged its assets for stock and cash "in pursuance of the plan of reorganization" and that the Allegheny Co. delivered to the Lamination Co. the specified stock and cash "pursuant to the plan of reorganization"; and the agreement between the corporations, attached to the stipulation, shows that, pursuant to and as a part of the plan of reorganization, the Lamination Co. agreed to liquidate and dissolve "at the earliest practicable date." Thus, the Lamination Co. was clearly a *party* to the contract which resulted in the reorganization; it was a *party* to the plan of reorganization and acted pursuant thereto. These facts alone, we think, are sufficient to justify the conclusion that this corporation was also a *party* to the reorganization, as that term is commonly understood.

The statute does not define the term " a party to a reorganization ", but section 112 (i) (2) provides that the term *includes* a corporation resulting from a reorganization, and *includes* both corporations in the case of an acquisition by one corporation of a majority of all the capital stock of another corporation. However, we think this provision can not be construed as restricting the meaning of the term " a party to a reorganization " exclusively to the two classes of corporations mentioned. It merely includes such corporations therein, just as the preceding subdivision (1) of the same section does not restrict the meaning of the term " reorganization " to a merger or consolidation, but includes therein the acquisition by one corporation of a majority of the capital stock or substantially all the properties of another corporation.

If one of the corporations here involved had acquired a majority of all the capital stock of the other, then by express statutory direction the Lamination Co. would be " a party to a reorganization." This is not what occurred. The Allegheny Co. acquired all the properties of the Lamination Co. for stock and cash. Since the latter company does not fall within either of the two classes of corporations which the statute expressly includes within the term " a party to a reorganization ", we must then consider whether the Lamination Co. may otherwise be said to have been a party to the reorganization.

This question, in our opinion, must be answered in the affirmative. We are dealing here with what amounts in effect to a merger of one corporation into another. A merger must involve not less than two corporations, and where one corporation merges into another, it would seem to be elementary to say that both corporations are parties to the merger. It is also the merger which constituted the reorganization in this case, and both corporations being parties to the merger, both must be regarded as parties to the reorganization. Each took a vital and essential part in the transaction without which there would have been no reorganization, and each was, therefore, a *party* to the reorganization, notwithstanding only one of the corporations was reorganized. Having reached the conclusion that the transaction in question constituted a reorganization, it is our opinion that the Lamination Co. was a *party* thereto.

The petitioners in this case exchanged their stock in the Lamination Co. for cash and stock in the Allegheny Co., and the question is to what extent the profit derived by each is recognizable for tax purposes. The pertinent provisions of the 1928 Act are as follows:

SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) *General rule.*—Upon the sale or exchange of property, the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) *Exchanges solely in kind.*—

\* \* \* \* \* \*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\* \* \* \* \* \* \*

(c) *Gain from exchanges not solely in kind.*—

(1) If an exchange would be within the provisions of subsection (b) \* \* \* (3) \* \* \* of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

The petitioners derived gain from an exchange not solely in kind, having exchanged their stock in one corporation a party to the reorganization for cash and stock in another corporation a party to the reorganization, and so come within the precise provisions of subsection (c) (1), *supra.* The transaction would be within the provisions of subsection (b) (3) if it were not for the fact that the property received in exchange consisted not only of stock permitted by (b) (3) to be received without the recognition of gain, but also of

money. Hence, the gain is recognizable, but in an amount not in excess of the money.

The remaining issue is whether the recognizable profit derived by the petitioners is taxable as a dividend, subject to the surtax and exempt from the normal tax, under section 112 (c) (2) of the 1928 Act, to the extent of the ratable share distributed to each petitioner of the surplus of the Lamination Co. accumulated after February 28, 1913, or whether the whole amount is to be treated as ordinary income, subject to both normal and surtax. The amount of surplus has been stipulated and set out in our findings of fact.

Petitioners contend that an equivalent amount of the recognizable gain is so taxable, while respondent contends that the entire amount is taxable as ordinary income, substantially on the theory that there was no reorganization. Since we have reached the contrary conclusion, that there was a reorganization, respondent's argument on this point falls.

However, in view of the statutory provisions relating to the taxation of ordinary and liquidating dividends, some of which provisions standing alone appear more or less ambiguous, it is believed that a brief discussion of these provisions, and the decisions thereunder, will be helpful.

The Revenue Acts of 1913, 1916, and 1917 made dividends taxable as income, and further provided for the taxation, as ordinary dividends, of distributions in liquidation to the extent of earnings and profits accumulated since February 28, 1913. The Revenue Act of 1918 also made dividends taxable as income, and in section 201 (a) defined the term "dividend" as follows:

Sec. 201. (a) That the term "dividend" when used in this title * * * means (1) any distribution made by a corporation * * * to its shareholders or members, whether in cash or in other property * * * out of its earnings or profits accumulated since February 28, 1913 * * *.

This definition of the term "dividend" contained in the 1918 Act is substantially the same as that contained in the prior acts, but Congress added subdivision (c) to section 201, reading in material part as follows:

* * * Amounts distributed in the liquidation of a corporation shall be treated as payments in exchange for stock or shares, and any gain or profit realized thereby shall be taxed to the distributee as other gains or profits.

Under this provision of the 1918 Act we held that it was the intention of Congress to exclude liquidating dividends from its broad definition of a dividend as contained in section 201 (a), even though such dividends included earnings accumulated since February 28, 1913, and that it was the intention of Congress to subject

to both normal and surtax any gains derived from such distributions in the same manner as other gains. *John K. Greenwood*, 1 B.T.A. 291; *J. H. Morrow, Administrator*, 1 B.T.A. 1148; *S. B. Quigley*, 2 B.T.A. 159; *George Shapiro*, 2 B.T.A. 620. To the same effect, see also *Helmich* v. *Hellman*, 276 U.S. 233.

The Revenue Act of 1921 likewise included dividends in taxable income, and defined the term substantially the same as in the prior acts.

It is significant to note, however, that subdivision (c) of section 201 of the 1918 Act, quoted above, which subjected liquidating dividends to both normal and surtax, was deliberately omitted from the 1921 Act, as finally passed, after consideration of this specific point by Congress. Thus, Congress eliminated the distinction between liquidating dividends and ordinary dividends which it had recognized in the 1918 Act, and declared anew its intent to tax as ordinary dividends all distributions of earnings accumulated since February 28, 1913, whether the dividends were in liquidation or otherwise, as was the case under the 1916 and 1917 Acts. *Frank D. Darrow*, 8 B.T.A. 276, cited with approval and followed in *Philetus W. Gates*, 9 B.T.A. 1133 (reviewed by the Board), and *Eric A. Pearson*, 16 B.T.A. 1405.

As we said in the *Darrow* case,

The intention of Congress to remove the distinction between liquidating dividends and other dividends, and to make its definition of the term in section 201 (a) comprehensive and all-inclusive so far as earnings or profits accumulated since February 28, 1913, are concerned, appears even more clearly from the history of the 1921 Act in process of enactment. The House bill provided, in section 201 (c), for the treatment of liquidating dividends in the identical language of the 1918 Act. The Senate amendment eliminated the provision entirely and substituted as subdivision (c) the provision as to stock dividends appearing as subdivision (d) in the Act as passed. The House accepted the amendment with an amendment which appears as subdivision (c) in the Act as finally passed. * * *

There would seem to be no doubt that Congress intended its definition of "dividends" to include liquidating dividends to the extent of earnings accumulated since February 28, 1913.

It is our conclusion that the term "dividends" as defined in section 201 of the Revenue Act of 1921 includes distributions in liquidation to the extent of the earnings or profits accumulated since February 28, 1913, contained therein, and that to the extent of those earnings such distributions are taxable as dividends, subject to the surtax and exempt from the normal tax.

Substantially the same definition of the term "dividend" contained in section 201 (a) of the 1921 Act, quoted above, appears as section 201 (a) of the 1924 and 1926 Acts, and as section 115 (a) of the 1928 Act.

The doctrine applied in the *Darrow* case, then, must be applied and the same conclusion reached in the instant case under the 1928

Act, unless the latter act contains some provision amounting to a change of the law and a reversion to the policy adopted by Congress under the 1918 Act. Section 201 (c) of the latter act provided that " amounts distributed in the liquidation of a corporation shall be treated as payments in exchange for stock or shares." This provision was omitted from the 1921 Act, but a similar and somewhat enlarged provision appears in section 201 (c) of the 1924 Act, reading as follows:

Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 202, but shall be recognized only to the extent provided in section 203. * * *

The same provisions in substance were reenacted in the 1926 Act as section 201 (c) and in the 1928 Act as section 115 (c).

Section 203 (d) (1) of the 1924 Act provides that if an exchange of property for other property would be within the nonrecognition provisions of subdivision (b) of that section if it were not for the fact that the property received in exchange consists not only of property permitted to be received without the recognition of gain but also of other property or money, then the gain, if any, shall be recognized, but in an amount not in excess of such money and the fair market value of such other property.

And paragraph (2) of the same section provides that if a distribution made in pursuance of a plan of reorganization is within the provision of paragraph (1) but *has the effect of the distribution of a taxable dividend*, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. Only the remainder, if any, of the recognizable gain may be taxed as gain from the exchange of property.

The same provisions are contained in sections 203 (d) (1) and (2) of the 1926 Act, and sections 112 (c) (1) and (2) of the 1928 Act.

From the foregoing we think it is clear that, since the enactment of the 1921 Act, it has been the settled, consistent policy of Congress to treat liquidating dividends as ordinary dividends to the extent of the corporate earnings accumulated since February 28, 1913, subject to surtax and exempt from normal tax.

While it is true that section 115 (c) of the 1928 Act, appearing as section 201 (c) of the 1926 and 1924 Acts, requires that liquidating distributions shall be treated as in part or full payment in exchange for the stock, yet such provision can not be construed as subjecting a liquidating dividend in connection with a reorganization to tax as

ordinary income *to the extent of corporate earnings included therein which were accumulated since February 28, 1913,* in view of the express provisions of section 112 (c) (2), *supra,* that such distribution " shall be taxed as a dividend " to the extent of each distributee's ratable share of the accumulated earnings and profits.

The provisions of section 112 (c) (2) of the 1928 Act first appeared in the revenue laws as section 203 (d) (2) of the 1924 Act. From 1921 to 1924, liquidating dividends to the extent of accumulated earnings were taxable as ordinary dividends subject to surtax, or at the rate applicable to capital net gain. The House Ways and Means Committee and the Senate Finance Committee in their official reports on the Revenue Bill of 1924 made the following explanation of the new provisions of section 203 (d) (2) :

There is no provision of the existing law which corresponds to paragraph (2) of subdivision (d). This paragraph provides that any amount distributed by a corporation in connection with a reorganization which has the effect of a taxable dividend shall be taxed as a dividend.

The necessity for this provision may best be shown by an example: Corporation A has capital stock of $100,000, and earnings and profits accumulated since March 1, 1913, of $50,000. If it distributed the $50,000 as a dividend to its stockholders, the amount distributed will be taxed at the full surtax rates.

On the other hand, corporation A may organize corporation B, to which it transfers all its assets, the consideration for the transfer being the issuance by B of all its stock and $50,000 in cash to the stockholders of corporation A in exchange for their stock in corporation A. Under the existing law, the $50,000 distributed with the stock of corporation B would be taxed, not as a dividend, but as a capital gain, subject only to the 12½ per cent rate. The effect of such a distribution is obviously the same as if the corporation had declared out as a dividend its $50,000 earnings and profits. If dividends are to be subject to the full surtax rates, then an amount so distributed should also be subject to the surtax rates and not to the 12½ per cent rate on capital gain.

As before stated, the provisions of section 203 (d) (2) were reenacted in the 1926 Act under the same section number, and in the 1928 Act as section 112 (c) (2). So far as concerns the question of taxing liquidating dividends, to the extent of accumulated earnings, as ordinary income, it is immaterial that the primary purpose of Congress in enacting section 203 (d) (2) was to prevent the taxing of such distributions at the capital gain rate. The fact remains that Congress has provided that they " shall be taxed as a dividend ", subject to the full surtax rates, and not otherwise. We may not, therefore, read into the statute the requirement that accumulated earnings distributed as a liquidating dividend shall be taxed at the full surtax rates, and also, in addition thereto, at the normal tax rate.

The conclusion herein reached is entirely in harmony with the settled and long continued general policy adopted by Congress for the taxation of corporate earnings. Section 25 (a) of the 1928

Act provides that an amount received as dividends by an individual stockholder shall be subject only to the surtax, and section 23 (p) provides that dividends received by a corporation shall be allowed as a deduction from gross income; that is, the amount is included in gross income and immediately deducted, so that it is not taxable to the corporate stockholder. It is then taxed at surtax rates when distributed to the individual stockholders. Similar provisions are contained in the prior acts.

These provisions unmistakably indicate the intention of Congress to subject corporate earnings to normal tax but once. The corporation which derives the earnings and profits is required to pay a normal tax thereon, and thereafter the stockholders pay only the surtax when distributed as dividends.

Section 112 (c) (2), *supra*, consistently applies this same scheme of taxation to distributions in liquidation which embrace corporate earnings accumulated after February 28, 1913. Such distributions are not technically dividends for the reason that they are not recurrent, nor made in the ordinary course of business, but to the extent of the accumulated earnings it is apparent that they have " the effect of the distribution of a taxable dividend," and therefore must be taxed at the same rates as dividends, that is, at the full surtax rates only.

In *George Woodward*, 23 B.T.A. 1259, we held that a distribution in liquidation which included surplus of the merged corporation accumulated after March 1, 1913, had " the effect of a distribution of a taxable dividend under section 203 (d) (2) of the Revenue Act of 1926," and was taxable as a dividend at surtax rates only, and not as capital gain.

In *T. W. Henritze*, 28 B.T.A. 1173, 1176, we held that a liquidating dividend, to the extent of the accumulated surplus, must be taxed as a dividend under section 112 (c) (2), *supra*, and not as either ordinary income or capital gain.

In *J. T. Owens*, 27 B.T.A. 469, we held that a distribution in liquidation, to the extent that it represented surplus and profits accumulated subsequent to March 1, 1913, was " taxable as a dividend within the provisions of section 112 (c) (2) of the Revenue Act of 1928 * * * at surtax rates only."

The latest judicial expression on this question is contained in the opinion of the Circuit Court of Appeals for the Fifth Circuit, rendered March 17, 1934, in *Commissioner* v. *Owens*, 69 Fed. (2d) 597, affirming 27 B.T.A. 469, *supra*, as follows:

The Board of Tax Appeals held that there was an exchange of stock for stock and money within the meaning of §112 (c) (1) of the Revenue Act of 1928, so that so much of the cash received as represents the surplus of the North Texas Bank is to be treated as a dividend not subject to normal tax

while the remainder is fully taxable gain realized in the transaction. The Commissioner contends that all is gain.

The Board is right. * * * The cash which they (stockholders of the liquidating corporation) received was all gain from their investment taxable under § 112 (c) (1), but so much of it as might before consolidating have been declared by their corporation as an ordinary dividend out of its profits is by (c) (2) to be so taxed. It is true that the money was not distributed by the North Texas Bank, and thus was not literally a dividend of that bank. But the statute speaks of a distribution which "has the effect of the distribution of a dividend." This pro rata payment to all stockholders of the North Texas Bank, whether assenting or dissenting, certainly has that effect.

It may be noted in this connection that the respondent's regulations are in harmony with the foregoing construction of the statutes (see art. 575, Regulations 74, Revenue Act of 1928), and, as we understand, his contentions in the present case are not contrary thereto.

For the reasons indicated, and on authority of the decisions cited, we here hold that so much of the recognizable profit derived by the petitioners as represents their respective ratable shares of the undistributed earnings of the Lamination Co. accumulated after February 28, 1913, is taxable as a dividend at surtax rates only.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

MURDOCK, dissenting: No part of the profit derived by these petitioners from the disposition of their Lamination Co. stock is taxable to them as a dividend. The distribution in question was in complete liquidation of the Lamination Co. Section 115 (c), a general provision covering the ordinary case, provides that " amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock." The gain, if any, from such a distribution would be taxable normally, not as a dividend, but as an ordinary gain. Section 112 (c) (2) is a special provision which applies only when a number of stated circumstances concur. The legislative history of that provision shows that it was intended to prevent taxpayers having large incomes from avoiding surtax on dividends through corporate reorganizations. The prevailing opinion states that " to the extent of the accumulated earnings it is apparent that they [liquidating distributions] have ' the effect of the distribution of a taxable dividend.' " In other words, every distribution by a corporation having earnings accumulated after February 28, 1913, has the effect of the distribution of a taxable dividend. If the legislators had so intended a simple statement in the act would have made their intention clear. The meaning of the words " has the effect of the distribution of a taxable dividend " must be determined. These words and the example given in the Committee reports, quoted

in the prevailing opinion, indicate that section 112 (c) (2) does not apply unless an examination into the particular transaction discloses some close resemblance between the distribution in question and an ordinary dividend distribution. Cf. sec. 115 (g), Revenue Act of 1928; *Annie Watts Hill*, 27 B.T.A. 73; affd., 66 Fed. (2d) 45. Normally a liquidating dividend does not have the effect of a taxable dividend, i.e., a dividend taxable·at surtax rates only, and section 112 (c) (2) was intended to apply to such a dividend only in the exceptional case.

The reorganization involved in this case was not designed for the purpose of permitting the Lamination stockholders to receive a dividend from their corporation. The Allegheny Steel Co. (unlike corporation B in the example) was not organized to take over all of the assets of the other company and distribute its surplus. Not only was the reorganization for a wholly different purpose, but the final result was quite different from what it would have been had the Lamination Co. merely declared and paid a dividend of its surplus. The assets of two corporations were commingled and two sets of former stockholders were united with common interests in but one corporation. This distribution did not have the effect of the distribution of a taxable dividend. Instead its effect was just about as different from that of a taxable dividend as well could be in the case of a distributor having earnings accumulated after February 28, 1913. Since there is no reason to tax the gain in any but the ordinary way, the gain recognized under section 112 (c) (1) is subject to both normal tax and surtax.

STERNHAGEN and GOODRICH agree with this dissent.