MARTIN S. LINDGROVE, Respondent, *v.* SCHLUTER AND COMPANY, INC., et al., Appellants, Impleaded with Others.

440

(Argued May 18, 1931; decided June 2, 1931.)

*Samuel Seabury* for appellants.   There was no contract by the corporation that dividends would be declared during the period of plaintiff's employment; there are no words in the writing which justify the implication of such an agreement and, in any event, such an agreement, whether expressed or implied, would be contrary to public policy, void and unenforceable.   (*West* v. *Camden,* 135 U. S. 507; *Flaherty* v. *Cary,* 62 App. Div. 116; 174 N. Y. 550; *Kassell* v. *Empire Trust Co.,* 178 App. Div. 176; *Groh's Sons* v. *Groh,* 80 App. Div. 85; *Stone* v. *Young,* 210 App. Div. 303.)   The complaint does not state facts sufficient to constitute a cause of action for wrongful refusal of the directors to declare a dividend.   It alleges that profits were made in particular transactions, but there is no allegation that these profits were net profits, or that there were no losses which reduced or wiped out the alleged profits, or that there was a surplus in any amount available for dividends.   It does not show that the directors, though they recognized the existence of sufficient surplus, and the propriety of declaring a dividend, in bad faith refrained from declaring one.   (*Liebman* v. *Auto Strop Co.,* 241 N. Y. 427; *Nauss* v. *Nauss Bros. Co.,* 195 App. Div. 318; *Leslie* v. *Lorillard,* 110

N. Y. 519; *Hastings* v. *International Paper Co.*, 187 App. Div. 404; *Greeff* v. *Equitable Life Assur. Soc.*, 160 N. Y. 19; *Wilson* v. *American Ice Co.*, 206 Fed. Rep. 736; *Trimble* v. *American Sugar Refining Co.*, 61 N. J. Eq. 341.) A wrongful refusal of directors to declare a dividend can be redressed by a stockholder only in an action for the benefit of all the stockholders. Such an action may not be maintained by a single stockholder suing in his own behalf. (*Von Au* v. *Magenheimer*, 126 App. Div. 257; *Flynn* v. *Brooklyn City R. R. Co.*, 158 N. Y. 493; *Maeder* v. *Buffalo Bill's Wild West Co.*, 132 Fed. Rep. 280; *Jones* v. *Van Heusen Charles Co.*, 230 App. Div. 694; *Hiscock* v. *Lacy*, 9 Misc. Rep. 578; *Liebman* v. *Auto Strop Co.*, 241 N. Y. 434.)

*Conrad Saxe Keyes* for respondent. The contract in suit should be so construed as to give to plaintiff such rights as might reasonably have been anticipated by him. (*Simon* v. *Etgen*, 213 N. Y. 588; *Wigand* v. *Bachman Brewing Co.*, 222 N. Y. 277; *Gillette* v. *Bank of America*, 160 N. Y. 549; *Genet* v. *Delaware & Hudson C. Co.*, 136 N. Y. 593; *Creamer* v. *Metropolitan Securities Co.*, 120 App. Div. 422; *Beaty* v. *Bacon*, 187 App. Div. 449; *Grodsky* v. *Jason*, 225 App. Div. 888.) A court of equity can compel the declaration of a dividend under proper conditions. (*Hiscock* v. *Lacy*, 9 Misc. Rep. 578; *Kassell* v. *Empire Tinware Co.*, 178 App. Div. 176; *Dodge* v. *Ford Motor Co.*, 204 Mich. 459; *Kranich* v. *Bach*, 209 App. Div. 52; *Liebman* v. *Auto Strop Co.*, 212 App. Div. 306; 241 N. Y. 427; *Matter of Brautman*, 244 Fed. Rep. 101; *Lee* v. *Fish*, 222 Mass. 418; *Mitchell* v. *Des Moines R. R. Co.*, 270 Fed. Rep. 468; *Lawton* v. *Bedell*, 71 Atl. Rep. 490.) The action was properly brought in the individual right of plaintiff. (*Ochs* v. *Madole Hammer Co.*, 138 Misc. Rep. 665; *Kavanaugh* v. *Kavanaugh Knitting Co.*, 226 N. Y. 185; *Hiscock* v. *Lacy*, 9 Misc. Rep. 578.)

KELLOGG, J.   The first cause of action attempted to be stated makes these allegations:

The plaintiff and the defendant corporation, in October, 1926, entered into a contract, whereby the defendant employed the plaintiff to act as its vice-president, at an annual salary. The employment was to continue until such time as it might be terminated by the arrival of a day fixed for its termination by a three months' notice served by either party upon the other. The plaintiff was elected vice-president and continued in the performance of his duties as such officer until November 15th, 1927, when the defendant served notice of the termination of the employment.

The contract also provided for the purchase by the plaintiff, as of November 1st, 1926, of 2,000 shares of the common stock of the defendant corporation, at a price to be ascertained in a prescribed manner, which was afterwards calculated to be $64,757.20. This sum might be paid in installments, but the whole sum, together with interest, must be paid prior to November 1st, 1938. The shares were to be issued to the plaintiff and to be transferred by him to the defendant as security for the payment in full of the purchase price.

The contract, attached to the complaint and made a part thereof, as alleged in paragraph 8, provided that " until said stock should have been paid for in full, all ordinary or extraordinary dividends, whether in cash or in kind, on said stock declared after November 1st, 1926, should belong to the plaintiff but might be applied by the defendant company as paid upon any unpaid balance of the purchase price of said stock or interest due thereon at the time of the payment of such dividends; provided, however, that the plaintiff should have the right to have paid out to him up to 50% of any dividends declared in any one year, such payments, however, not to exceed $7,500 in amount in any one year."

On the 1st of November, 1926, certificates for 2,000

shares of the common stock of the defendant Schluter and Company, Inc., were issued to the plaintiff, who became the holder of record thereof, and were thereafter indorsed by the plaintiff in blank and deposited with the defendant corporation as security for the payment of the purchase price therefor. The defendant corporation, during the period from November 1st, 1926, to November 15th, 1927, the term of plaintiff's actual employment as vice-president, "earned large profits in cash and securities upon its capital stock to an amount, as plaintiff is informed and verily believes, in excess of $500,000." The proportion which accrued to the 2,000 shares owned by the plaintiff amounted to upwards of $118,000, or more than the full amount of the purchase price therefor. Nevertheless, the defendant corporation made no declaration of dividends.

The complaint contains an allegation that there was an implied agreement between the plaintiff and the defendant corporation " that dividends would be declared and paid upon said stock at reasonable intervals as and when earned thereon so that the plaintiff herein might have an opportunity of performing his contract of purchase and having applied thereon the sums of money or the amounts of property declared as dividends or earned thereon, and of thereby participating in the profits of said corporation."

The complaint also alleges " that in order to avoid the effect of the contract and to defraud the plaintiff of his share of the earnings of the defendant company, and to secure the services of the plaintiff at the salary provided for in said contract, without allotting to him his fair participation in the aforesaid profits of the company, defendant corporation, by Frederic E. Schluter, its President, terminated plaintiff's contract on the 15th day of November, 1927, without having declared any dividends upon said stock although the same had been earned."

The plaintiff claims that a contract obligation to declare dividends, resting upon the defendant corporation, is sufficiently shown by the matter appearing in paragraph 8 of the complaint, which we have quoted above. We think that the quoted words fail utterly to justify an inference that any such agreement was made. The paragraph asserts that the contract provided that dividends "should belong to the plaintiff" which might be "declared after November 1st, 1926;" that they "might be applied," by the defendant, upon any unpaid balance of the purchase price, "due thereon at the time of the payment of such dividends;" that the plaintiff "should have the right" to have paid out to him up to "50% of any dividends declared in any one year" not exceeding $7,500. Here is no promise made, either expressly or inferentially, that the defendant corporation will pay dividends. On the contrary, the words of the paragraph set forth nothing more than a contract provision, made on behalf of the corporation, that dividends, if declared, might in part be applied upon the debt of the plaintiff to the corporate defendant. Nor is there any other paragraph in the complaint or clause in the contract which justifies a conclusion that an obligation to declare dividends was undertaken by the defendant.

Even if the contract words disclosed the assumption of such an obligation, the plaintiff would not be helped. The directors of a corporation owe a duty to their stockholders to exercise an impartial judgment in reference to the declaration of dividends. and to declare them only when, under the existing circumstances, a declaration will seem best to serve the corporate interests; and no contract, engaging them unrestrictedly to declare dividends, can have any legal force. (Morawetz on Private Corporations, § 519; 1 Cook on Corporations [8th ed.], § 271; *West* v. *Camden*, 135 U. S. 507; *Flaherty* v. *Cary*, 62 App. Div. 116; 174 N. Y. 550.) "Such an agreement would be dishonest and illegal; it would be an agreement

to commit a breach of trust." (Morawetz, *supra.*) What is true of contracts by directors is true of contracts by corporations, which may act only through directors. (6 Fletcher, Cyclopedia of the Law of Private Corporations, § 3659.) Consequently, the plaintiff has no contract right to have dividends declared, which may be enforced herein.

We think also that the first cause of action alleged states no right of the plaintiff as a stockholder of record to require a declaration of dividends which may be enforced in a court of equity. For one reason, the obligation sought to be stated is clearly contractual in nature, and not otherwise. Thus the only wrong asserted is that the defendant " terminated plaintiff's contract " without declaring dividends, " in order to avoid the effect of the contract." For another, there are no sufficient allegations of fact to indicate that the corporation's failure to declare dividends was grounded in bad faith, or actuated by a motive to injure, rather than benefit, its stockholders generally, or this plaintiff as a stockholder in particular. Moreover, the plaintiff, at the conclusion of his term of service as vice-president, was no longer entitled to assert that he was possessed of the rights of a stockholder, or that he ever had been. The complaint correctly states a provision of the contract to have been " that if, by reason of death or otherwise as provided in the contract, plaintiff should cease to be connected with the defendant company before the entire purchase of said stock should have been made as above provided, then and in that event the agreement of sale and purchase, so far as it related to such of the stock as should not at that time have been paid for, should be deemed canceled and of no effect and the defendant company might transfer the certificates for said stock free and clear of any claim by plaintiff under said contract." At the time when the plaintiff's services were terminated the plaintiff, so far as appears, had made no

payments whatever for the stock. Therefore, at that time the contract of purchase became "canceled" and "of no effect." With the cancellation of his contract the plaintiff lost all title to the stock, and all rights, which may previously have been possessed by him, to have dividends declared.

The second cause of action alleges the purchase by the plaintiff of twenty additional shares of common stock of the defendant corporation but fails to assert that plaintiff has made payment in full therefor, so that the cause of action must be dismissed. The third cause of action stands, for the reason that the motion to dismiss was not directed thereto.

The order of the Appellate Division and that of the Special Term should be reversed and the question certified answered in the negative, with costs in all courts, and with leave to plaintiff to amend within twenty days on payment of costs.

Cardozo, Ch. J., Pound, Crane, Lehman, O'Brien and Hubbs, JJ., concur.

Ordered accordingly.