THE LIQUIDATING COMPANY (FORMERLY STANDARD CREAMERIES, INC.) *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60850.  Promulgated February 25, 1936.

*Stanley Pedder, Esq.*, for the petitioner.
*F. R. Shearer, Esq.*, for the respondent.

1174

1176

OPINION.

LEECH: The most important issue presented is whether petitioner's transaction with Borden constituted a reorganization within the

meaning of section 112 of the Revenue Act of 1928, the pertinent parts of which are set out in the margin.[1]

In its contract with Borden, the petitioner agreed to transfer to the former all of its assets except its stock in its subsidiaries and all the assets of its subsidiaries, including, in each case, the business of the corporation as a going concern. The consideration to be received by the petitioner was the stock of Borden, its assumption of all the liabilities of the petitioner, and its agreement to provide funds to redeem, on September 1, 1929, all the then outstanding debenture bonds of the petitioner. Borden further agreed to transfer to the petitioner additional stock in case of the conversion of any of its debentures into its own common stock. The petitioner was required to retire its preferred stock (which in case of its dissolution became payable in cash), to distribute its remaining Borden stock to its stockholders, and then, with all reasonable dispatch, to dissolve itself and its subsidiaries. This contract was carried out. As the result of the transaction the petitioner became a stockholder in Borden and the rights of its creditors were retained as against that company or were paid off as agreed. The petitioner and its subsidiaries have been dissolved and are now doing no business except that

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) *General rule.*—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) *Exchanges solely in kind.*—

(4) SAME—GAIN OF CORPORATION.—No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

\* \* \* \* \* \* \*

(d) *Same—Gain of corporation.*—If an exchange would be within the provisions of subsection (b) (4) of this section if it were not for the fact that the property received in exchange consists not only of stock or securities permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then—

(1) If the corporation receiving such other property or money distributes it in pursuance of the plan of reorganization, no gain to the corporation shall be recognized from the exchange, but

(2) If the corporation receiving such other property or money does not distribute it in pursuance of the plan of reorganization, the gain, if any, to the corporation shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property so received, which is not so distributed.

\* \* \* \* \* \* \*

(i) *Definition of reorganization.*—As used in this section and sections 113 and 115—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

of liquidating. All this was done pursuant to the plan of reorganization set out in the agreement of July 5, 1929.

Under these circumstances, we think that such transaction between the petitioner and Borden was a reorganization, within the meaning of section 112 (i) (1) (A) of the Revenue Act of 1928. *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462; *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937; *Watts* v. *Commissioner*, 75 Fed. (2d) 981; affd., 296 U. S. 387; *Minnesota Tea Co.* v. *Commissioner*, 76 Fed. (2d) 797; affd., 296 U. S. 378. The fact that the petitioner may have received "other property or money" does not alter this conclusion. It merely limits the taxable gain to "the sum of such money and the fair market value of such other property so received, which is not so distributed." Sec. 112 (d) (2), quoted in the margin.

In his original computation of the pending deficiency, respondent determined that the amount of $873,995 with which the debentures were paid was "money" within the meaning of subdivision (d) of section 112. He used that amount as a yardstick with which to measure the amount of the petitioner's taxable gain on the whole transaction. On his assignment of error to that determination, petitioner argues: (1) That this was but a method of discharging a debt already assumed by Borden; (2) that the petitioner was never in receipt of this sum; (3) that it was distributed, within the meaning of section 112 (d) (1).

With respect to the first contention, it is pointed out that the respondent has not determined that the assumption of petitioner's liabilities by Borden constituted "other property or money" and so it is immaterial whether petitioner's obligation on its debenture bonds was assumed and afterwards paid, or a contract was made to furnish funds with which to pay that debt. The question whether an assumption of liabilities in such a case constitutes "other property" is not before us. We express no opinion with reference thereto, but confine ourselves to the issue presented by the pleadings. That issue is whether the money advanced to pay the debentures did or did not constitute "money" received by the petitioner and was not distributed within the meaning of section 112 (d) (2), *supra.* It is important to note that the obligation by which petitioner's liabilities were assumed appears in one paragraph and the agreement to provide the funds for the payment of the debentures, which is another and distinct obligation, is found in a separate paragraph of the contract. But, more significant is the fact that Borden was not in a position to assume the payment of the debentures for the one reason, if for no other, that these debentures contained an

agreement for conversion into stock of the petitioner with which it would have been impossible for Borden to comply. The petitioner in its return for the fiscal year ending September 30, 1929, claimed and was allowed deductions of premiums, accrued interest, and unamortized discount on these very debenture bonds. However, considering what was actually done under the contract and not what might have been done or the purpose which might have actuated the parties (*E. F. Simms*, 28 B. T. A. 988, 1011; *William H. Mullins*, 14 B. T. A. 426), we are of opinion that the cash advanced by Borden to pay the petitioner's debt, and so used, was received by the petitioner (*Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716) in payment of part of the agreed consideration. There is thus no merit in the first or second contention.

This brings us to petitioner's third argument.

Since it received the stock and cash, petitioner's gain was taxable to the extent of the cash received unless it distributed the cash, as provided in section 112 (d) (1). Petitioner asserts that the cash was distributed. He contends that the word "distributes" as used in subsection (d) (1) should not be limited to distributions to stockholders. He apparently argues that the payment of the debt constituted a distribution.

The gain of a corporation incurred in a reorganization transaction is taxed only to the corporation or ultimately to its stockholders. There is nothing in section 112 or any of the related sections which indicates any purpose to transfer the tax due from a corporation to any other persons. Cf. *Evert A. Bancker*, 31 B. T. A. 14.

In *West Texas Refining & Development Co.* v. *Commissioner*, 68 Fed. (2d) 77, the court had before it similar sections contained in the Revenue Act of 1926. The court there said:

Assuming, but not deciding, that the transaction was a reorganization within the meaning of section 203 (b) (3), then the effect of section 203 (e) (2) must be considered. Where there is a corporate reorganization and a transfer of the assets of the old corporation to the new corporation and an exchange of the interests of the stockholders in the old corporation for like or substantially like interests in the new corporation, there is in substance no closed transaction and no gain. But where a consideration has been paid for such transfer of assets and not distributed to the stockholders of the old corporation and hence not reflected in their individual tax returns, but paid to the old corporation and used by it to pay debts, unless the gain realized to the extent not distributed to the stockholders of the old corporation is made taxable, a realized gain would escape taxation; hence the provisions of section 203 (e) (1 and 2).

Since the cash payment, not distributed to the stockholders of the West Texas Company, was more than the profit realized on the transaction, the whole profit was taxable as income to the West Texas Company under the provisions of section 203 (e) (2).

Such, it seems, was the concept of the Congress,[2] which enacted the Revenue Act of 1924, the provisions of which, on this subject, are similar to those before us for application. House Report No. 179, 68th Cong., 1st sess., p. 15.

We hold that the cash received from Borden was not distributed, within the meaning of section 112 (d) (1). *Arctic Ice Machine Co.*, 23 B. T. A. 1223; mod., 67 Fed. (2d) 983.

In reference to the transfer by petitioner of shares of Borden stock to Shurtleff, Northon, and Wilson as "trustees" for its preferred stockholders, petitioner takes two positions. They are: First, that, by that transfer the petitioner divested itself of all interest in the stock transferred with the result that sales made by the trustees were not sales made by the petitioner and therefore no taxable gain could accrue to the latter; and second, that, since the transaction occurring under the contract between the petitioner and Borden resulted in a reorganization, a necessary part of which was the redemption of the preferred stock, no taxable gain arose from the sales.

In answer to the first, it may be doubted that petitioner parted with all rights and title to the Borden stock transferred to the trustees. If the trustees received more than sufficient to liquidate petitioner's preferred stock, the excess was returnable to petitioner. In fact, the surplus money in the hands of the trustees after liquidation of the preferred stock was so returned. The trustees distributed or sold all the stock they received.

Certainly the trustees did not receive this Borden stock as a liquidation in kind for the preferred stockholders. Petitioner's preferred shareholders were then creditors of petitioner. The trustees' receipt of Borden stock did not satisfy petitioner's obligation to those preferred stockholders. This record will sustain no other conclusion.

The petitioner, although dissolved, was continued as a body corporate for dissolution purposes. Section 40, General Corporation Law of the State of Delaware. One of these purposes was the liquidation of its outstanding stock including its preferred stock.

---

[2] Section 203 (e): There is no provision of the existing law which corresponds to subdivision (e) of the bill, nor has the Treasury Department ever ruled officially on the type of case covered by that subdivision. The subdivision provides that if a corporation in connection with a reorganization transfers its assets to another corporation, a party to the reorganization, for stock and securities of the same corporation and cash, then no gain or loss to the transferor is recognized, if it distributes the cash *to its stockholders*. But if the selling corporation fails to distribute the cash *to its stockholders* then the gain or loss is to be recognized. In other words, if the corporation which sells its assets in connection with the reorganization acts merely as a *conduit* in passing the proceeds of the sale on *to its stockholders*, no gain to the corporation is to be recognized, but if it retains all or any of the proceeds with the result that the transaction is in substance a real sale, then all or a part of the gain shall be recognized. [Emphasis supplied.]

This duty was performed in part by the three trustees as mere agents of petitioner for that purpose.

Article 71 of Regulations 74 reads:

ART. 71. *Gross income of corporation in liquidation.*—When a corporation is dissolved, its affairs are usually wound up by a receiver or trustees in dissolution. The corporate existence is continued for the purpose of liquidating the assets and paying the debts, and such receiver or trustees stand in the stead of the corporation for such purposes. (See sections 274 and 298 and articles 1191 and 1192.) Any sales of property by them are to be treated as if made by the corporation for the purpose of ascertaining the gain or loss. No gain or loss is realized by a corporation from the mere distribution of its assets in kind in partial or complete liquidation, however they may have appreciated or depreciated in value since their acquisition. But see section 44 (d) and article 355. (See further article 392.)

That regulation has been found reasonable. It is applicable here to characterize petitioner as the seller. *Taylor Oil & Gas Co.* v. *Commissioner*, 47 Fed. (2d) 108; certiorari denied, 283 U. S. 862; *Burnet* v. *Lexington Ice & Coal Co.*, 62 Fed. (2d) 906; *Hellebush* v. *Commissioner*, 65 Fed. (2d) 902; and *Northwest Utilities Securities Corporation* v. *Helvering*, 67 Fed. (2d) 619; certiorari denied, 291 U. S. 684.

In applying the above regulation, it is immaterial whether a corporation attempts to vest trustees with title to all or only a part of its assets. In either case the trustees are vested with a liquidating function, a duty which pertained to the corporation and not to the stockholders, who were entitled only to receive. They were distributing or selling stock which in fact belonged to the corporation. *Taylor Oil & Gas Co.* v. *Commissioner, supra.*

Nor is it material that in following the course the petitioner pursued, it did not follow the ordinary methods of corporations in liquidation. *Northwest Utilities Securities Corporation* v. *Helvering, supra.*

Therefore, these sales, for tax purposes, are to be treated as having been made by petitioner.

But the petitioner argues these sales, as well as those by it, direct, from the proceeds of which dissolution expenses were paid, were in pursuance of the plan of reorganization, and the profits therefrom consequently exempt. However, we are convinced that the controlling statutory provision does not exempt from immediate tax gain received by the taxpayer upon a sale not essential to the consummation of *a statutory reorganization.* Cf. *Edison Securities Corporation*, 29 B. T. A. 483; affirmed in part and reversed in part, 78 Fed. (2d) 85. Obviously, any other conclusion would be, at least, highly unreasonable, because of its consequences.

It may well be true that the present plan of reorganization included not only the exchange of stock and cash for assets, but the

liquidation of petitioner's preferred stock, and its dissolution. See *West Texas Refining & Development Co.* v. *Commissioner, supra; First Seattle D. H. National Bank* v. *Commissioner,* 77 Fed. (2d) 45; *Samuel Insull, Jr.,* 32 B. T. A. 47. But, aside from the question whether these sales of the Borden stock by petitioner on the market, from the proceeds of which petitioner's outstanding preferred stock was redeemed, were an essential part of *that* plan, neither the liquidation of the petitioner's preferred stock nor its dissolution was necessary to constitute the contemplated and executed transaction *as a reorganization within the applicable statute. Minnesota Tea Co.* v. *Commissioner, supra; Watts* v. *Commissioner, supra.*

We therefore sustain the respondent's determination of taxable gain to petitioner upon the sale of Borden stock by the trustees, Shurtleff, Northon, and Wilson, with the proceeds of which petitioner's outstanding preferred stock was redeemed.

The expenses, to pay which petitioner, itself, made the other disputed sales of Borden stock, were undoubtedly necessary to petitioner's dissolution. However, as stated, that dissolution was not essential to the completion of a statutory reorganization. *Minnesota Tea Co.* v. *Commissioner, supra; Watts* v. *Commissioner, supra.* And so, the gains on those sales, upon the same reasoning as applied to the sales last discussed, would also be taxable here to petitioner.

The petitioner contends that the items making up the total of the $27,978.99, which, it is stipulated, represents stock-selling expenses incurred and paid prior to the fiscal year 1929 by the petitioner's subsidiaries, the Benham Ice Cream Co. and Gloria Ice Cream Co., constitute capital expenditures which are deductible upon the dissolution of these corporations in that year. It so treated them in its consolidated return. The respondent denied the deductions but included this amount as part of the cost of the assets transferred to Borden. The respondent does not attack his own determination on this point. In his answer to the petition, as amended, he asks that if we hold that this item or any part thereof is deductible from gross income for the year 1929, then the amount so allowed should be eliminated from the cost of assets transferred and the profit thereon increased accordingly. These presently disputed expenses were not capital expenditures and were not deductible, as contended. *Pacific Coast Biscuit Co.,* 32 B. T. A. 39; *James I. Van Keuren,* 28 B. T. A. 480. Upon this record we go no further but leave the parties on this issue as we found them.

The petitioner seeks to deduct from gross income for the fiscal year 1929 the organization expenses of itself and of its affiliates, Benham Ice Cream Co. and Gloria Ice Cream Co.

The so-called certificates of dissolution were issued by the Secretary of State of Delaware in the case of the petitioner on August

**1188**

3, 1929, in the case of Gloria Ice Cream Co. on September 30, 1929, and in the case of the Benham Ice Cream Co. on October 4, 1929. The affidavits of the publishers of the newspapers containing the advertisements required by section 39 of the General Corporation Law of Delaware, as amended by the Act of 1929, were filed with the Secretary of State of Delaware on the following dates: the Liquidating Co., September 3, 1929; the Gloria Ice Cream Co., October 3, 1929; and the Benham Ice Cream Co., October 7, 1929.

Section 39 of the General Corporation Law of Delaware of 1929, effective March 22, 1929, provides such affidavits

* * * shall be filed in the office of the Secretary of State, who, upon being satisfied by due proof that the requirements aforesaid have been complied with, shall issue a certificate that such consent has been filed, and the Secretary of State shall cause such certificate to be published in one issue in a newspaper published in the county wherein the principal office of the dissolved corporation was situated. The Secretary of State shall ascertain the charge for publishing the certificate of dissolution as aforesaid, and collect the amount from the corporation before the certificate of dissolution is issued; and upon the filing in the office of the Secretary of State of an affidavit of the manager or publisher of the said newspaper that said certificate has been published one time, in said newspaper, the corporation shall be dissolved.

Under the above provisions it is apparent that the petitioner was dissolved on September 3, 1929. It is equally clear that Benham Ice Cream Co. was not dissolved within the fiscal year ending September 30, 1929. While the so-called certificate of dissolution was issued to Gloria Ice Cream Co. on September 30, 1929, the affidavit of the publishers of the newspapers, as required by the above section, was not filed until October 3, 1929. Therefore, the Gloria Ice Cream Co. was not dissolved within the fiscal year ending September 30, 1929. Since the two affiliates are not before us for the succeeding fiscal year, no relief can be afforded them. The material part of section 40 of the General Corporation Law of Delaware provides:

All corporations, whether they expire by their own limitation, or are otherwise dissolved, shall nevertheless be continued for the term of three years from such expiration or dissolution bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, and to divide their capital stock but not for the purpose of continuing the business for which said corporation shall have been established * * *.

When the petitioner was dissolved, it lost the right to continue the business for which it had been established. It retained its corporate life for the sole purpose of liquidation. It was not engaged in a business while liquidating. *Trustees for Gonzolus Creek Oil Co.*, 12 B. T. A. 310; *White* v. *Hornblower*, 27 Fed. (2d) 777; *Willis* v. *Commissioner*, 58 Fed. (2d) 121. In our opinion when the petitioner was dissolved on September 3, 1929, and thereby lost the right to

transact its regular business, it surrendered its charter in reality then. For this reason the petitioner should be permitted to deduct organization expenses in the amount of $59,041.76. *Pacific Coast Biscuit Co., supra; Malta Temple Association*, 16 B. T. A. 409. In reaching this conclusion we have not overlooked our decisions in *City & Suburban Mortgage Co.*, 26 B. T. A. 179, and *Surety Finance Co. of Tacoma* v. *Commissioner*, 77 Fed. (2d) 221. Neither of these decisions is in point for the reason in neither was the taxpayer corporation dissolved.

*Judgment will be entered under Rule 50.*