MINNESOTA TEA COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54227. Promulgated March 18, 1936.

*James G. Nye, Esq.,* and *Homer Hendricks, Esq.,* for the petitioner.

*George D. Brabson, Esq.,* for the respondent.

OPINION.

STERNHAGEN: In this proceeding, the Board, in *Minnesota Tea Co.,* 28 B. T. A. 591, held, upon the stipulated facts, that there was no statutory reorganization, and this decision precluded consideration of the taxpayer's contest of the Commissioner's original determination of deficiency. The Board's decision was reversed, *Minnesota Tea Co.* v. *Commissioner,* 76 Fed. (2d) 797; *Helvering* v. *Minnesota Tea Co.,* 296 U. S. 378. The proceeding is now here under mandate for consideration of the original issue.

The question is whether gain is to be recognized to the extent of $106,471.73 of the cash received, that being the amount of the corporate debts which were assumed and discharged by the shareholders. In 1928 the petitioner, in the statutory reorganization, transferred its assets to the Grand Union Co. for 18,000 shares of Grand Union stock and $426,842.52 money. The corporation was committed, by a resolution adopted the preceding day, to turn over the money immediately to its shareholders. The resolution is as follows:

Resolved further that all moneys received by Minnesota Tea Company on such sales of its assets and in consideration thereof, whenever received, shall be im-

mediately distributed to the stockholders of Minnesota Tea Company ratably and in the proportion of their respective stockholdings in Minnesota Tea Company upon the assumption by the stockholders of all the corporate debts of Minnesota Tea Company in order to enable the company to hold all the corporate stock or securities received by it for its assets on such sale thereof without being compelled to sell any part of the same, and the Board of Directors are hereby authorized and directed to so distribute the said moneys as aforesaid and in behalf of the company enter into a written agreement with the stockholders, signed and executed by the company and all the stockholders whereby said stockholders, in consideration of such distribution and for the purpose of enabling the company to continue to hold the said corporate stock and securities without being compelled to sell any part thereof for the payment of existing debts, agree to pay all the corporate debts of the Minnesota Tea Company whether due and payable or not and whether certain or contingent.

The money was turned over to the shareholders. The corporate debts amounted to $106,471.73. The evidence does not contain the written agreement required by the resolution, but it is stipulated that the amount of the liabilities was assumed and discharged by the shareholders.

The petitioner contends that immediately upon the receipt of the Grand Union shares and the $426,842.52, it distributed the money in pursuance of the plan of reorganization, and that the situation is squarely within section 112 (d) (1), Revenue Act of 1928,[1] providing that "no gain shall be recognized." The respondent urges that the shareholders' assumption of the corporate debts prevents the amount of $106,471.73 from being regarded as a distribution by the corporation, and hence that it may not escape recognition as part of the corporation's gain.

Taking the resolution at its face, it provides for two things: (1) the "distribution" to the shareholders of all the money received in the reorganization, and (2) an "agreement" by the shareholders to pay the corporate debts. Both were carried out. Apparently neither the terms of the resolution nor the actual conduct of the parties justifies treating these promises as conditioned one upon the other. *Jacob & Youngs, Inc.* v. *Kent*, 230 N. Y. 239; 129 N. E. 889; Restatement of the Law, Contracts, § 261; Williston on Contracts, § 665. The legal effect of a dividend resolution which embodies such a shareholders' promise is not clear, cf. *Lindgrove* v. *Schluter & Co.*, 256

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\* \* \* \* \* \* \*

(d) *Same—gain of corporation.*—If an exchange would be within the provisions of subsection (b) (4) of this section if it were not for the fact that the property received in exchange consists not only of stock or securities permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then—

(1) If the corporation receiving such other property or money distributes it in pursuance of the plan of reorganization, no gain to the corporation shall be recognized from the exchange, but

\* \* \* \* \* \* \*

N. Y. 439; 176 N. E. 832; *Thomas* v. *Matthews*, 94 Ohio St. 32; 113 N. E. 669, but even if we treat the relation between the petitioner and its shareholders as if it were contractual, there is no reason to say that the failure of the shareholders to perform the promise would avoid or rescind the distribution. The corporation was not liquidating, and it had assets consisting of the 18,000 shares of Grand Union stock plus $426,842.52 in cash (approximately $966,000), entirely ample to justify a dividend of $426,842.52 and payment of its debts of $106,471.73, *Clarence LeBus*, 1 B. T. A. 733; cf. *O. B. Barker*, 3 B. T. A. 1180. Under these circumstances, breach of the shareholders' promise would give the corporation no more than (if as much as) a remedy in damages. This would leave the dividend unaffected as to character or amount.

The Government argues that, of the distribution, $106,471.73 must be regarded as charged with the payment of the debts, or as a trust fund appropriated to that purpose, and that in neither event is it, properly speaking, a distribution. The corporation, until the actual discharge of its debts, remained the primary debtor. No attempt was made to secure the consent of the creditors to a substitution of obligor. The corporation continued to own the 18,000 Grand Union shares, worth over $500,000. What then is the foundation for a trust? Ordinary legal remedies were available for the ample protection of all parties. The corporation was neither liquidating nor impoverishing itself. Its liability persisted until payment. There was no occasion, either as to the corporation or as to the shareholders, for a trust. Against the shareholders, the corporation had, if there was a juristic promise, a remedy at law if they failed to pay the debts. The shareholders, upon the receipt of the $426,842.52 cash, had the right to use it as they chose and to fulfill their promise to the corporation in any way they might elect, without being required to use the distribution to pay the debts. If, indeed, the shareholders were able by negotiation to discharge the debts for less than their book or face value, they were still entitled to retain the amount of the distribution.

The regulations adopted pursuant to the Revenue Act of 1928 deal no more specifically with the present state of facts than does the statute itself, nor is any light to be derived from the Congressional reports as to the Revenue Bill of 1924, which first carried the statutory provision, i. e., Revenue Act of 1924, section 203 (e) (H. Rept. No. 179, Committee on Ways and Means, 68th Cong., 1st sess., p. 15; and S. Rept. No. 398, Committee on Finance, 68th Cong., 1st sess., p. 16). When considering the changes proposed from the existing Revenue Act of 1921, the House Committee on Ways and Means had before it a statement by A. W. Gregg, special assistant to

the Secretary of the Treasury,[2] which illuminates the intendment of the act finally passed, and indicates that since the petitioner was in fact "a mere conduit" through which the money passed from the Grand Union Co. to the shareholders, any gain to the petitioner which it embraced should escape recognition. Argument is presented to establish that this legislative history justifies a construction broad enough to include a distribution among creditors as well as among shareholders. This view has its advocates,[3] but it is not necessary that it be directly decided in this proceeding, for, as we have seen, the petitioner did not provide for or make a distribution among its creditors and did not secure from its creditors a release from its obligations. When a corporation used money thus received in a reorganization for the purpose of directly discharging its bonded indebtedness, it was held that such use was not a statutory distribution. *Liquidating Co.*, 33 B. T. A. 1173. But the proposition that the corporation's direct payment to its bondholders is not a statutory distribution does not carry the corollary that the shareholders' promise to discharge the corporation's current debts had the same effect, and changes the distribution made to them into a discharge by the corporation of its debts, converting, so to speak, the actual distribution pro tanto into a constructive nondistribution.

[2] Sec. 203 (e) : There is no provision of the existing law which corresponds to subdivision (e) of the bill, nor has the Treasury Department ever ruled officially on the type of case covered by that subdivision. The subdivision provides that if a corporation in connection with a reorganization transfers its assets to another corporation, a party to the reorganization, for stock and securities of the same corporation and cash, then no gain or loss to the transferor is recognized, if it distributes the cash to its stockholders. But if the selling corporation fails to distribute the cash to its stockholders then the gain or loss is to be recognized. In other words, if the corporation which sells its assets in connection with the reorganization acts merely as a conduit in passing the proceeds of the sale on to its stockholders, no gain to the corporation is to be recognized, but if it retains the entire amount of proceeds with the result that the transaction is in substance a real sale, then the gain shall be recognized.

A corporation in connection with a reorganization may dispose of its assets in one of three ways : It may transfer them to a new corporation in exchange for stock or cash ; it may transfer them to the new corporation, the consideration being the payment by the new corporation of stock or cash to the stockholders of the old corporation ; or the new corporation may buy, with its stock and cash, from the stockholders of the old corporation their stock and then liquidate the old corporation. If a corporation adopts the first method, its gain from the sale could be taxed. If it adopts the second method, the gain probably could be taxed on the theory of constructive receipt by the selling corporation. If it adopts the third method, there is no theory on which any gain to the old corporation could be taxed. As a result of these considerations, subdivision (e) has been so drafted that the tax liability on the selling corporation is the same no matter which of the three methods set out above is adopted. In other words, if the selling corporation is a mere conduit through which the consideration for the sale of the assets passes, or if the consideration for the sale of the assets is paid direct to the stockholders of the old corporation, without passing through the conduit, no gain or loss to the old corporation is recognized, and the same result is reached that would have to be reached necessarily if the transaction were accomplished through the medium of a purchase by the new corporation of the stock of the old corporation followed by a liquidation of the old.

[3] Paul and Mertens, Law of Federal Income Taxation, Vol. 2, § 17.102 ;
Miller, Reorganizations and Other Exchanges in Income Taxation, § 134 ;
Montgomery, Federal Income Tax Handbook, 1935–1936, p. 202 ;
Cf. Baar and Morris, Hidden Taxes in Corporate Reorganizations, ch. 12, § 15.

The Government urges that since the Tea Co. in fact had a gain of $712,195.90 (see 28 B. T. A. 591), all of which would be taxable but for the special statutory provisions for nonrecognition, the nonrecognition may only extend to cases clearly within the statute, and that the taxpayer is charged with the burden of bringing himself within the nonrecognition provision. This is a correct general statement, *Sarther Grocery Co.*, 22 B. T. A. 1273; affd., 63 Fed. (2d) 68; *Arctic Ice Machine Co.*, 23 B. T. A. 1223; 67 Fed. (2d) 983; *Edison Securities Corporation*, 29 B. T. A. 483; 78 Fed. (2d) 85. Literally, however there was an express distribution of all the money among the shareholders, and it is the respondent who seeks to depart from the recognition of the facts and to call the actual distribution which was made a constructive payment of corporate debts. It can not readily be said that to avoid recognition of the gain is contrary to any purpose manifest in the statute. The dominating purpose of the reorganization provisions of the statute is elusive. It is far from clear enough to prevent the recognition of an express distribution because it has the effect of lowering the corporation's tax.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

ARUNDELL, dissenting: The question in this case is whether the petitioner meets the provisions of section 112(d)(1) of the Revenue Act of 1928 to the extent of $106,471.73 of the cash received by it from the Grand Union Co., which was the amount of the corporate debts assumed and discharged by the petitioner's stockholders. The majority opinion holds that it does. I can not agree with that holding.

First: The recent case of the *Liquidating Co.*, 33 B. T. A. 1173, decides directly against the suggestion that a distribution among creditors may come within the statute, holding that cash received in a reorganization and used to redeem the taxpayer's debentures was not distributed within the meaning of the cited section. To the same effect is *West Texas Refining & Developing Co.* v. *Commissioner*, 68 Fed. (2d) 77.

Second: If the above proposition is sound, there would not be a different rule where the corporation turns the money over to others to use to pay its debts. Whatever the legal relation of the recipients to the taxpayer, they would be liable for payment of the debts at the instance of the creditors. *Lawrence* v. *Fox*, 20 N. Y. 268; *Hendrick* v. *Lindsay*, 93 U. S. 143. Their liability in this respect would not depend on the solvency or insolvency of the taxpayer nor upon whether or not the liability of the taxpayer persisted. I think it

a misconstruction of the provisions of the resolution to say that the distribution by the corporation and the agreement by the stockholders to assume the debts were not conditioned upon each other. The part of the resolution quoted consists of one sentence. In the first part it is resolved "that all moneys * * * be immediately distributed * * * upon the assumption by the stockholders of all the corporate debts." In the second part the directors are authorized and directed to distribute the money accordingly and to enter into an agreement with the stockholders whereby the stockholders "in consideration of such distribution * * * agree to pay all the corporate debts." To me it seems clear from this language that the distribution is expressly conditioned upon the assumption of the corporate debts by the stockholders and they took the distribution subject to this condition. A dividend resolution "is to be taken as it emanates from the board. A part of it can not be taken and the rest discarded." *State* v. *B. & O. R. R.*, 6 Gill (Md.) 363, 386, quoted in *General Utilities & Operating Co.*, 29 B. T. A. 934; affd., 296 U. S. 200. Thus, in the final analysis the petitioner merely used its stockholders as a conduit for payment of its debts, and gain realized and used for this purpose can not escape tax under the reorganization provisions of the statute. *Liquidating Co.*, *supra*.

Black, McMahon, Turner, Mellott, and Arnold agree with this dissent.