ELKHORN COAL COMPANY, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 49064–49070. Promulgated July 30, 1936.

*John L. Steinbugler, Esq., Leo H. Hoffman, Esq.,* and *Robert W. Knox, Esq.,* for the petitioners.

*R. W. Wilson, Esq.,* and *Arthur Clark, Esq.,* for the respondent.

[1] Proceedings of the following petitioners are consolidated herewith: William C. Atwater, Jr.; David H. Atwater; John J. Atwater; Margaret A. Olds; Lena C. Hutchins; and Charles P. Hutchins.

850

OPINION.

MATTHEWS:[2] The division report and determination in the above-entitled case promulgated on January 28, 1936, and published at 33 B. T. A. 995, which was, on motion of respondent filed January 25, 1936, referred to the Board for review, was vacated on March 6, 1936, and the proceedings rereferred for further consideration.

It is the position of the petitioners that when the Elkhorn Coal & Coke Co., hereinafter referred to as Elkhorn, transferred a part of its assets to the Elkhorn Coal Co., hereinafter referred to as the new company, in exchange for over 80 percent of the new company's stock, which was distributed to Elkhorn's stockholders, there was a reorganization within the meaning of clause (B) of section 203 (h) (1) of the Revenue Act of 1926; that the subsequent transfer by Elkhorn of all the properties which it then owned to the Mill Creek Coal & Coke Co., hereinafter referred to as Mill Creek, for

---

[2] This decision was prepared during Miss Matthews' term of office.

1,000 shares of 25 percent of Mill Creek stock, constituted a reorganization within the meaning of clause (A), and that no taxable gain was realized by Elkhorn as a result of either of these transactions, under the provisions of section 203(b)(3).

Petitioners also contend that Elkhorn Coal Co. alone is subject to transferee liability, if any.

The respondent takes the position that there was one continuous plan which embraced all the steps taken and that before a single step was taken there had been formulated a single plan of reorganization or regrouping of corporate assets. He lays great stress on the fact that meetings of the directors and stockholders of Elkhorn and of the new company, and a meeting of the directors of Mill Creek, were held at the same place upon the same day, December 17, 1925, and all within the space of a few hours, and were attended by the same individuals. He argues that, since Mill Creek did not intend to acquire substantially all of the property owned by Elkhorn at the inception of the plan, Mill Creek did not acquire "substantially all" of the property of Elkhorn on December 31, 1925.

Respondent contends that in substance, and in fact, what occurred is this: Mill Creek acquired a portion of the assets of Elkhorn in exchange for 25 percent of the total outstanding stock of Mill Creek and the remaining assets of Elkhorn, having substantial value, were retained by a successor corporation to Elkhorn in such manner that the equitable interest therein of each stockholder of Elkhorn remained unchanged; that the retention of the remaining assets by the successor corporation was in all respects the equivalent of retention by Elkhorn itself; that the various steps taken, or transactions consummated, between Elkhorn and the new company, and thereafter between Elkhorn and Mill Creek, were nothing more nor less than an elaborate tax avoidance scheme to accomplish a result equivalent in all other respects to that which would have obtained if Elkhorn had transferred its mining properties directly to Mill Creek in exchange for 1,000 shares (25 percent) of Mill Creek stock.

Respondent does not argue that each of the steps taken, if viewed separately and apart from all other steps, does not fall within certain of the tax-exempt provisions of the statute. He submits, however, that there is no justification for viewing these transactions separately and apart one from the other; that, since in cases involving the question of whether or not immediately after a transfer the transferor or its stockholders or both are in control of the transferee so as to bring the case within the exemption of section 203 neither the Board nor the courts have hesitated to consider the entire series of events after the transfer and to reject as not constituting control

the momentary appearance of control where it was never intended, by equal reasoning the entire series of events preceding a transfer must be considered in cases like the present to see whether or not substantially all the assets of one corporation have in effect been acquired by another or whether such was the appearance artificially given to a transaction through the maneuvering of events, whereas in reality the transaction did not meet the test.

In support of the motion filed by respondent for reference of the division report promulgated on January 28, 1936, to the Board for review, respondent submits that it was encumbent upon the petitioners to show affirmatively that the transfer to Mill Creek was so completely separate, distinct, and disassociated from the transfer by Elkhorn of other assets at the same time that it can fairly be said that the transfer to Mill Creek was an acquisition by Mill Creek of substantially all of Elkhorn's properties. He lays great stress on the fact that there is no testimony by anyone on behalf of petitioners that the two acquisitions were disconnected. He again lays stress on the coincidence of personnel, time of meetings, and control of all three corporations by the same individuals, and states that on the very day that the first transfer was made, December 18, 1925, the second transfer was as good as made and that it was a practical certainty that it would be made. He again submits that both transfers were part and parcel of a larger plan in which a substantial portion of Elkhorn's assets were transferred to the new company and its other assets were transferred to Mill Creek, and insists that on the facts we should treat the two transfers as having been made at substantially the same time or that the transfer to the new company was equivalent to a retention by Elkhorn of the assets transferred. He cites the cases of *Alice V. St. Onge*, 31 B. T. A. 295, and *Arctic Ice Machine Co.*, 23 B. T. A. 1223, as supporting his contention.

Respondent also contends that each of the petitioners is a transferee, either directly or indirectly, of the assets of Elkhorn, and that each petitioner was in receipt of an amount in excess of the tax liability asserted against the taxpayer.

The applicable provisions of the Revenue Act of 1926 are set out in the margin.[3]

---

[3] RECOGNITION OF GAIN OR LOSS FROM SALES AND EXCHANGES.

Sec. 203. (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section.

\* \* \* \* \* \* \*

(b) (3) No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

\* \* \* \* \* \* \*

(h) As used in this section and sections 201 and 204—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least

We agreed with respondent that the whole series of events preceding a transaction claimed to be a tax-free reorganization, under the terms of clause (A) of section 203 (h) (1), should be considered in determining whether or not substantially all the assets of one corporation have in fact been acquired by another. We also think that events subsequent to such a transaction should be taken into consideration.

We do not doubt that before a single step was taken a plan had been formulated for regrouping the corporate assets. We do not question the fact that Mill Creek was on December 17, 1925, aware of the steps which were subsequently to be taken by Elkhorn and the new company, since three of the directors of each corporation, which constituted a majority of the directors of each corporation, were the same individuals and since Elkhorn and its stockholders owned or controlled a majority of the stock of Mill Creek. And it is clear that after all the steps had been taken the individuals who had been stockholders of Elkhorn had the same economic interest in the assets transferred to the new corporation and to Mill Creek as they formerly had in such assets.

We do not agree, however, with respondent's contention that the transfer of a large part of the assets of Elkhorn to the new company on December 18 was equivalent to the retention by Elkhorn itself of these assets. Such conclusion is not justified by the stipulated facts. Neither do the facts justify the respondent's contention that the transfer to the new corporation should be treated as having been made at the same time as the transfer to Mill Creek.

In the instant case the same group of individuals controlled all the corporations involved. Neither this group of individuals nor Elkhorn was enriched by the transactions. The group of individuals owned or controlled the same interest in the assets after December 31 and after January 22 as they did before December 9, when the new corporation was organized. Each of the several transfers was the shifting of assets from one corporation to another for stock. None of the transfers bears the semblance of a sale.

The reason for transferring the mining property located at Maybeury, West Virginia, from Elkhorn to Mill Creek was to operate the two mines as one and thus reduce the cost of operation. Such transfer was germane to the business of both corporations, which was the mining of coal.

---

a majority of the total number of shares of all other classes of stock of another corporation or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

The stipulated facts justify the inference that one of the motives which the stockholders of Elkhorn had in organizing the new corporation and causing the three corporations to adopt the several steps or plans of reorganization which were adopted and carried out, was to make the transfer of the mining properties from Elkhorn to Mill Creek without resulting tax liability to Elkhorn or to themselves. The facts do not justify the inference that this was the only motive of the stockholders; but even if it were, we could not, on the facts of this case, refuse to regard what was actually done and to give effect thereto.

Elkhorn and its stockholders are separate taxable entities and we have before us the tax liability of Elkhorn. By the first transfer there was a modification of the corporate structure of Elkhorn. A large part of its assets were transferred to the new company for over 80 percent of that corporation's stock, which was immediately distributed by Elkhorn to its stockholders. The new corporation was organized under the laws of another state and has been engaged in mining coal on the tract of coal lands which was transferred to it, and it is still in existence. By this transfer and the distribution of the stock received, Elkhorn completely divested itself of all right, title, and interest in and to the assets transferred and the stock received in exchange. In so far as Elkhorn was concerned, it was in exactly the same position after the transfer of December 18 as it would have been if it had distributed these assets to its stockholders in kind instead of distributing to them the stock which it received upon their transfer.

As was stated above, we think that consideration should be given to the whole series of events, both before and after a transaction, claimed to be a tax-free reorganization, in determining whether the transaction is in fact what it appears to be in form. But where, as here, the main object to be accomplished is a legitimate business purpose, effect must be given to what was done. Upon every exchange, gain or loss is realized and is recognized for tax purposes unless it falls within one of the exceptions in the statute. The time when such exchange takes place is a question of fact, and if the facts show that an exchange made at a particular time was for a legitimate business purpose and was intended to be a permanent exchange and not merely a temporary holding of title to obscure the real transaction, effect must be given thereto. The transfer of December 18 was not a device to hide the real nature of the later transfer, but was a bona fide business move under which Elkhorn intended to, and did, effectively and permanently dispose of the assets transferred on that date for a controlling interest in the corporation to which they were transferred. This transaction meets the definition of reorganization

contained in clause (B) of section 203(h)(1). After December 19, when the stock received on the exchange was distributed to its stockholders without the surrender of their Elkhorn stock, Elkhorn was possessed only of the mining properties located at Maybeury, West Virginia.

After December 19 the stockholders had shares in two corporations which evidenced their interest in the assets which had formerly been held by one corporation, but Elkhorn had only the mine and mining properties located at Maybeury, West Virginia. On December 31 these properties were transferred to Mill Creek for 1,000 shares (25 percent) of Mill Creek's stock. By this exchange, Mill Creek acquired all the properties of another corporation, which constitutes a reorganization within the definition contained in clause (A) of section 203(h)(1). Under the provisions of section 203(b)(3) no gain or loss is recognized where a corporation, a party to a reorganization, exchanges property, in pursuance to the plan of reorganization, solely for stock or securities in another corporation, a party to the reorganization.

Since the decisions of the Supreme Court in *Gregory* v. *Helvering*, 293 U. S. 465; *Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378; *Helvering* v. *Watts*, 296 U. S. 387, and *Nelson Co.* v. *Helvering*, 296 U. S. 374, it is clear that where a transfer made pursuant to a plan of reorganization meets the terms of the statute, and such transfer is not merely a device to obscure the real transaction, effect must be given thereto. See also *Helvering* v. *Winston Brothers Co.*, 76 Fed. (2d) 381; *Western Industries Co.* v. *Helvering*, 82 Fed. (2d) 461; *Chisholm* v. *Commissioner*, 79 Fed. (2d) 14, and *Bremer* v. *White*, 10 Fed. Supp. 9.

The respondent would have us substitute, by construction, a fictitious transaction which would have had a similar economic effect, in so far as the stockholders of Elkhorn are concerned, for the transactions which were actually made. There is nothing in the record which would justify such disregard of what actually occurred. There was no duty on the part of Elkhorn, or its stockholders, so to fit the transfers into the revenue act as to produce a tax. *Gregory* v. *Helvering, supra.*

In our opinion, the facts show affirmatively that the transfer to Mill Creek was completely separate and distinct from the earlier transfer by Elkhorn to the new corporation. The transfer made on December 18 was complete within itself, regardless of what Elkhorn planned to do later, or did subsequently do. It was not a sham or a device intended to obscure the character of the transaction of December 31. The stipulated facts do not suggest other than a bona fide business move.

The transfer made on December 31 was also complete within itself, and was made for reasons germane to the business of both corporations. This transfer falls within the terms of clause (A) of section 203 (h) (1), whether or not Elkhorn was dissolved. *Helvering* v. *Minnesota Tea Co., supra.* Therefore, the transaction of December 31 was no sale, but a reorganization. The transferor received an interest in the transferee which represented a material part of the value of the transferred assets and within a short time the transferor was dissolved.

Giving heed to what in law was done, rather than to its economic equivalent, the transfer of December 31 was made pursuant to a plan of reorganization, and, under the provisions of section 203 (b) (3), the gain to Elkhorn upon the transfer is not recognized.

The case of *Alice B. St. Onge, supra*, was decided before the Supreme Court rendered its decisions in *Helvering* v. *Minnesota Tea Co., Helvering* v. *Watts*, and *Nelson Co.* v. *Helvering, supra*, and is now on appeal to the Circuit Court of Appeals for the First Circuit. Whether we would have reached any different decision if we had had the benefit of the Supreme Court decisions, it is not now necessary to decide. The *St. Onge* case is distinguishable on its facts from the instant case. In that case the plan adopted and carried out was described and called a plan of sale under which the assets and business of a state bank (of which the taxpayer was a stockholder) were purchased by a national bank for cash, and the stock of the national bank was purchased by the stockholders of the state bank for cash. We held that the transaction was what the parties called it—a sale for cash by the state bank and the purchase of stock of the national bank for cash by the stockholders of the state bank. In the instant case the transactions of December 18, 1925, and of December 31, 1925, were both made pursuant to plans of reorganization, whereby assets of one corporation were *exchanged* for stock of another corporation.

Since there were other adjustments about which the parties are not in dispute, it is necessary to determine whether all of the petitioners are transferees of Elkhorn. The stipulated facts show that the individual petitioners are not transferees of Elkhorn. Inasmuch as the Elkhorn Coal Co. acquired all of the assets of Elkhorn in liquidation on January 22, 1926, it is the only transferee of Elkhorn, within the meaning of the statute.

Reviewed by the Board.

> *Judgment of no deficiency will be entered in Docket Nos. 49065, 49066, 49067, 49068, 49069, and 49070. Judgment under Rule 50 will be entered in Docket No. 49064.*

MURDOCK, dissenting: I do not think there was a statutory reorganization within the definition of section 112 (i) (1) (A) of the Revenue Act of 1928. The question is whether there was an acquisition by one corporation of "substantially all of the properties of another corporation." The transferor corporation in this case first divested itself of a part of its assets; then the acquiring corporation acquired all of the assets which remained. These two steps were both parts of one plan. They were both essential to the completion of the two alleged statutory reorganizations involved in that single plan. See *Liquidating Co.*, 33 B. T. A. 1173. I think that plan must be looked at as a whole, and if the acquiring corporation does not, in the end, have substantially all of the properties which the transferring corporation had when the first step in the plan was taken, then the express terms of the statute have not been complied with. *Alice V. St. Onge*, 31 B. T. A. 295. See also *Arctic Ice Machine Co.*, 23 B. T. A. 1223; *David Gross*, 34 B. T. A. 395. The Board has consistently followed these cases and no higher authority has ever said they were wrong.

LEECH, TURNER, MELLOTT, and ARNOLD agree with this dissent.